# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6625 | **DATE** | 1/5/2004 |
| **CASE TITLE** | | Green vs. Bryant | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on ___. set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order.  For the reasons stated in the Memorandum Opinion and Order, the court concludes that petitioner is not entitled to relief and petition for writ of habeas corpus is hereby denied and case is terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | 2 | **Document Number** |
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | JAN 0 0 2004 | |
| | Notified counsel by telephone. | | | date docketed | |
| | Docketing to mail notices. | | | | |
| ✓ | Mail AO 450 form.  Mailed by MD. | | | docketing deputy initials | 26 |
| | Copy to judge/magistrate judge. | | | 1/5/2004 | |
| MD | courtroom deputy's initials | | | date mailed notice | |
| | | | | MD | |
| | | | | mailing deputy initials | |

| | | |
|---|---|---|
| United States of America ex rel. | ) | |
| ANTWAN GREEN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 01 C 6625 |
| | ) | Judge Joan H. Lefkow |
| STEVEN C. BRYANT, | ) | |
| Warden, | ) | |
| Graham Correctional Center,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

In a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, petitioner Antwan

Green (hereinafter referred to as "Antwan," "defendant" or "petitioner") challenges his

conviction for first-degree murder entered in the Circuit Court of Cook County, Illinois.

Petitioner contends that his conviction was the result of constitutional error. Petitioner raises the

following claims in his habeas petition: (1) prosecutorial misconduct; (2) ineffective assistance of

trial counsel; and (3) insufficient evidence to prove petitioner's guilt beyond a reasonable doubt.

For the reasons stated below, the court denies petitioner's claims.

## HABEAS STANDARDS

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), this court

must deny a petition for a writ of habeas corpus with respect to any claim adjudicated on the

merits in the state court unless the state court's decision "was contrary to, or involved an

---

[1]Steven C. Bryant is listed as the Warden for Graham Correctional Center, where petitioner currently is in custody, and thus is the proper respondent in this habeas action. *See* Rule 2(a) of the Rules Governing Habeas Corpus Cases under 28 U.S.C. § 2254. This court hereby substitutes Steven C. Bryant as respondent. *See* Fed. R. Civ. P. 25(d)(1).

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." *See* 28 U.S.C. § 2254(d); *Price* v. *Vincent*, __ U.S. __, 123 S. Ct. 1848, 1852 (2003). A state court's decision is contrary to clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it]." *Williams* v. *Taylor*, 529 U.S. 362, 405 (2000). In order for a state court decision to be considered "unreasonable" under this standard it must be more than incorrect, it must lie "well outside the boundaries of permissible differences of opinion." *Hardaway* v. *Young*, 302 F.3d 757, 762 (7th Cir. 2002); *see also Schultz* v. *Page,* 313 F.3d 1010, 1015 (7th Cir. 2002) (reasonable state court decision must be at least minimally consistent with the facts and circumstances of the case).

Before reviewing the state courts' decisions, however, the court must determine whether the petitioner fairly presented his federal claims to the state courts, as any claim not presented to the state's highest court is deemed procedurally defaulted. *O'Sullivan* v. *Boerckel*, 526 U.S. 838, 844-45 (1999). Moreover, "[a] federal court will not review a question of federal law decided by a state court if the decision of the state court rests on a state procedural ground that is independent of the federal question and adequate to support the judgment." *Moore* v. *Bryant*, 295 F.3d 771, 774 (7th Cir. 2002). A federal court may not grant habeas relief on a defaulted claim unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result

2

in a fundamental miscarriage of justice. *Coleman* v. *Thompson*, 501 U.S. 722, 750 (1991); *Anderson* v. *Cowen*, 227 F.3d 893, 899 (7th Cir. 2000).

## FACTS AND PROCEDURAL HISTORY

When considering a habeas petition, this court must presume that any state court's factual determinations are correct unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Todd* v. *Schomig*, 283 F.3d 842, 846 (7th Cir. 2002). Although the court mostly agrees with the Illinois Appellate Court's summation of the facts, it also relies on the state court record where necessary.

In early 1995, the State charged petitioner and Dwayne McKinzie ("McKinzie") with first-degree murder of Orlando Owens. McKinzie pled guilty and received a sentence of 24 years imprisonment. (Resp. Ex. F, Circuit Court of Cook County, Illinois, Post-Conviction No. 95 CR 6108, Order of Jan. 25, 1999, at 2.) Petitioner was tried by a jury, where he was represented by counsel. Unless otherwise specified, the following is a recitation from the Illinois Appellate Court's direct review of petitioner's conviction (Resp. Ex. B, Appellate Court of Illinois, First Judicial District, Case No. 1-96-1220, Order of Apr. 24, 1998 at 2-9):

During the State's case-in-chief at petitioner's trial, Detective George Karl ("Detective Karl") testified that petitioner gave a statement after Detective Karl informed petitioner of his constitutional rights under *Miranda* v. *Arizona*, 384 U.S. 436 (1966), in the early morning hours of his arrest on January 31, 1995. Petitioner told Detective Karl that he and McKinzie drove his tan Chevy to 83rd and Kingston where they met the victim. The victim entered petitioner's car and opened a bottle of beer, then the victim and McKinzie began fighting. Petitioner stated that he pulled into the alley at 9016 Burley and told the victim and McKinzie to exit the car. After

they exited, petitioner said he heard gunshots. When petitioner exited his car, he saw McKinzie holding a weapon. The victim was shot, crawling into the gangway. He and McKinzie followed the victim into the gangway. Then McKinzie gave petitioner the gun and told him to shoot the victim in the head. McKinzie took the gun back and said, "Let's finish this Motherf***ker off." Petitioner said McKinzie began choking the victim, and petitioner kicked the victim in the head two or three times. Petitioner said that he and McKinzie then returned to petitioner's car, drove a short distance, and McKinzie exited. Petitioner drove to 90th Street and Baltimore, where he parked the car, exited, and walked. He was soon picked up by the police.

According to Detective Karl, Assistant State's Attorney Cory Pollack ("ASA Pollack") re-administered petitioner's *Miranda* rights, and petitioner repeated his statement to ASA Pollack. Petitioner declined to reduce his statement to writing or have it transcribed by a court reporter.

Officer Willie Harris ("Harris"), an expert in fingerprint comparison, testified that a fingerprint lifted from the right front door of petitioner's car belonged to McKinzie.

Scott Rochowicz ("Rochowicz"), an expert in gunshot residue (GSR) analysis, testified that he tested the GSR swabs taken from petitioner and McKinzie after they were arrested. Rochowicz testified that the GSR test performed on petitioner was inconclusive. There were "elevated" amounts of barium, antimony, and lead on petitioner's hand, but he could not say that petitioner handled a weapon. The back of petitioner's right hand tested positive for antimony and lead, but was "0.96" micrograms short of the requisite level of barium for a positive GSR test result. Rochowicz also testified that McKinzie's swabs were negative for GSR.

Deputy Medical Examiner Thamrong Chira ("Dr. Chira") testified that he performed the autopsy on the victim. Dr. Chira determined that the victim died of five gunshot wounds and that blunt trauma to the head was a significant contributing factor. Dr. Chira also found other injuries consistent with being kicked.

Josephine Muhammad ("Muhammad") testified that on January 30, 1995, at about 2:20 a.m., she heard five gunshots from the rear of her house at 9018 South Burley. She then heard somebody fall against her bedroom window and groan, "Help me, somebody help me." She heard the voice from the front of her house, so she went to look out her living room window. She saw the victim standing in front of her neighbor's house stumbling and asking for help. Four or five people came by and told the victim they would get help. Muhammad testified that when the people left two men came from the gangway. One man stayed at the end of the gangway, while another hooded man came out, grabbed petitioner, and dragged him by his feet into the gangway. She heard the victim say, "No, don't do that to me." Muhammad then heard the men kicking the victim in the gangway and saying, "Die, motherf***er." Muhammad heard the victim scream, "Don't hurt me," then silence. The police arrived soon afterward.

Officer Dennis Suglich ("Suglich") testified that he was on his way to the scene of the shooting in his squad car when he received the flash radio message that two black males wearing dark clothes were seen leaving the scene of a crime heading westbound. A few minutes later, Suglich saw petitioner and McKinzie, both dressed in black, running through an empty lot only one and a half blocks from the scene of the crime. Petitioner and McKinzie were the only two people on the street. When petitioner and McKinzie saw Suglich's squad car, they attempted to hide against the side of an abandoned building bordering the lot. When Suglich exited his squad

5

car to approach them, both petitioner and McKinzie ran off, heading eastbound toward Baltimore. Suglich ran after them for less than one block, pursuing them into a yard with a fence. Suglich was within six feet of petitioner when petitioner climbed the fence, looking back at Suglich. The yard was illuminated by lights nearby. Suglich testified that he saw petitioner's face for "a good second or two." Although petitioner escaped, Suglich succeeded in tackling McKinzie.

Sergeant Ricardo Pina ("Pina") also testified. At approximately 3:30 a.m., Pina was on patrol in his squad car looking for the person who had fled from Suglich, a black male wearing dark clothing with a hood, as described to him an hour earlier. Pina was driving southbound at 90th Street and Houston when he saw petitioner, who was wearing dark clothes, walking through an alley behind a library. Petitioner was the only person on the street. Pina exited his squad car and asked petitioner his name, address, and where he was going. Petitioner told Pina his name and address, 8240 S. Ada, and said that he was coming from his girlfriend's house at 87th Street and Mackinaw. Petitioner, however, could not tell Pina a precise address or his girlfriend's telephone number.

Pina radioed Suglich, who was transporting McKinzie to the station at the time, for a verification of the description of the suspect. Suglich described the suspect as a black male wearing black pants and a black coat with a hood. Pina then handcuffed petitioner, placed him in the squad car, and took him to the crime scene, where Suglich identified him as the individual who had fled from him earlier.

Thereafter, the State rested. (Resp. Ex. L, Trial T. at O-164.) Before resting, defense counsel requested the trial court to admonish petitioner. (*Id.*) Petitioner stated that he agreed

6

with counsel's decision not to present additional evidence or to call witnesses. (*Id.*) Then the defense rested.

The court then proceeded to closing arguments. During closing argument, petitioner's trial counsel stated that petitioner denied making a confession. Petitioner's counsel also pointed out that the State failed to document the existence of the confession and questioned the credibility of the State's witness, Detective Karl, who testified about the confession.[2] On rebuttal, the prosecutor labeled the petitioner's counsel's argument as the "26th Street shuffle," (presumably referring the Cook County Criminal Courthouse, located at 2650 South California Avenue). The prosecutor pointed out that no one testified to contradict Detective Karl's testimony about petitioner's confession and thus petitioner's counsel failed to produce evidence to refute the State's evidence. Moreover, the prosecutor stated that petitioner's counsel failed to produce evidence that Detective Karl was a liar.[3] Despite the trial court's sustaining defense

---

[2]On direct appeal, the Illinois Appellate Court relied on the following excerpt from defense counsel's closing argument:

> [Defendant] never gave a statement, and I will tell you why he never gave a statement. There is nothing in the reports, nothing written, nothing signed, and Detective Karl told you about the State's Attorney, to try and give his own story credibility, he said I had a lawyer there who heard Antwan give that statement, a lawyer who works with them, with these two gentlemen right there.

> Where is he. If he was there and he heard the statement, don't you think it was [*sic*] make sense that he would come in here and tell you what he heard, and see if what he heard is the same as what Detective Karl told you. Absolutely. It makes sense. The reason that they don't want to do that, is because they know it is not true. * * *. We won't put anybody else on, and that should be enough. We can slide that one by, because we don't know if he shot him or if he was involved.
> * * *
> This is not a young man who fell apart and just decided to give a statement. He did not give a statement, he never said that. As a matter of fact, the only thing he did was deny this.

(Resp. Ex. L, Trial Tr. at 183085, 189.)

[3]The Illinois Appellate Court also relied on an excerpt from the prosecutor's rebuttal argument. The court,
(continued...)

however, quotes from the trial transcript in greater length as follows:

> I am going to show you a dance step today, ladies and gentlemen, and it is called the 26th Street shuffle. The first step, ladies and gentlemen, is this: You don't present any evidence and then you comment about how all of people [sic] are liars.
>
> * * *
>
> And I remind you the defense had the audacity to say that without any proof whatever, any proof whatever. He say [sic] that Detective Karl lied.
>
> * * *
>
> He was given the opportunity to cross examine Detective Karl. Well, Detective Karl, isn't it true that my client was there for forty hours. Did anyone testify that anything bad happened to poor Antwan Green, the murderer of a twenty-two year old, during that forty hour period of time.
>
> Did anyone come in and say Antwan Green had his rights violated. Did anyone say he was not allowed to eat or go to the bathroom. Did any person come in here and say Antwan Green was examined by a physician and he told anyone anything.
>
> Did anybody come in at all to tell you that anything happened to him during that forty hour period. Did one person whisper it. I kept looking and listening like you folks during the course of this trial for someone, anyone to say what happened to Antwan Green that was bad, because that is evidence. That is evidence. And did anyone say poor, poor Antwan Green. That is what happened. This is what happened to Antwan Green.
>
> * * *
>
> Now, at any point in this trial, has any tangible evidence been offered by the defendant to dispute that.
>
> [DEFENSE COUNSEL]: Objection Judge, I don't have to. He didn't have --
>
> THE COURT: Objection sustained.
>
> [THE PROSECUTOR]: If something happened during that forty hour period, there has been no evidence that anything was done, and that is very clear.
>
> * * *
>
> We know that he lied to lied to Sergeant Pina when he came into contact with him. He said I was with my girlfriend at 83rd and whatever, and what is her address and her phone number, he can't remember.
>
> * * *
>
> So, that is the first contact he has with the police. There is no evidence, he just said that. He said the only thing my client did was deny it. Did anyone hear that? Did anybody hear any witness say that? No, and you know why, it is called the 26th Street shuffle, because here is what happens, you get a case like this, and you think what am I going to do.
>
> * * *
>
> The defendant has admitted what he did in this case, he told Chicago Police Officers and the Assistant State's Attorney * * *. He said where is the Assistant State's Attorney. Well, he might have forget [sic] this, but we both have the right to subpoena people. We can bring in any witness to court we want to in connection with this case, and any witness we feel has relevant information.

(continued...)

counsel's objections, the prosecutor also argued that defense counsel could have subpoenaed the Assistant State's Attorney to testify about petitioner's confession but failed to do so.

At the conclusion of the trial, the jury deliberated for three hours and returned a guilty verdict. (Resp. Ex. F at 2.) Subsequently, the trial court sentenced petitioner to 40 years imprisonment. On May 14, 1997, petitioner, represented by counsel, appealed his conviction, raising, *inter alia*, the same claims included in his habeas petition with the exception of his sufficiency of the evidence claim. (Resp. Ex. A, Appellate Court of Illinois, First Judicial District, Case No. 1-96-1220, Opening Br. of the Def.-Appellant at 19, 22.) On April 24, 1998, the Illinois Appellate Court affirmed his conviction. (Resp. Ex. B at 1.) On August 4, 1998,

---

[3](...continued)
       If they did think this was important, why didn't they bring the State's Attorney in this case

- -

      [DEFENSE COUNSEL]: Again Judge, objection. I don't have a duty to bring in witnesses.

      THE COURT: Sustained.

      [THE PROSECUTOR]: They have the right to subpoena in witnesses just like we do. Back into the dance step that I was talking about, so what is confronting him. He had admitted to the commission of this crime to Chicago Police Officers, admitted what he did.
                  * * *
      Now, I keep hearing there is no evidence in the case, but this is not no evidence, ladies and gentlemen, and there has been no indication or evidence offered to contradict this.
                  * * *
      And it is not enough to stand up here and say they lied because of who they are, all of these other things. You have to show us, show us what you mean when you say someone is lying. Just because you can say the word liar, that is not enough.
                  * * *
      It doesn't matter what community, but unless you can show some particular hatred between the parties or some aspect of the case that was actually perjured or lied about, then you don't have a case. You can't just say liar, you have to show something, and there is nothing.
                  * * *
      This is Chicago, and in Chicago, Mr. Green, you are guilty because you described to a detective what you did, and because you can't show us and have not shown us that the detective lied about what he said, has he. It is just the opposite.

(Resp. Ex. L, Trial Tr. at 0-191-207.)

petitioner filed a *pro se* petition for leave to appeal. (Resp. Ex. C, Supreme Court of Illinois, Case No. 1-96-1220, Pet. for Leave to Appeal at 12, 15.) The Illinois Supreme Court summarily denied the petition on October 6, 1998. (Resp. Ex. D, Supreme Court of Illinois, No. 86079, Order of Oct. 6, 1998.)

On or about November 30, 1998, petitioner filed a *pro se* post-conviction petition under 725 ILCS 5/122-2 *et seq.*, raising, *inter alia*, the ineffective assistance of counsel and sufficiency of the evidence claims that are included in his habeas petition. (Resp. Ex. E, Circuit Court of Cook County, Illinois, Post-Conviction No. 95 CR 6108, Pet. for Post-Conviction Relief at 3-7.) The post-conviction court dismissed the petition as frivolous and patently without merit on January 25, 1999. (Resp. Ex. F at 11.) Petitioner filed a notice of appeal on February 28, 1999 and received appointed counsel from the Illinois Public Defender's Office. Petitioner's counsel filed a motion to withdraw on October 14, 1999. (Resp. Ex. G, Appellate Court of Illinois, First Judicial District, No. 99-1137, Mot. to Withdraw.) Petitioner filed a response letter to counsel's motion to withdraw on December 7, 1999. (Resp. Ex. H, Appellate Court of Illinois, First Judicial District, No. 99-1137, Resp. Letter in Opp'n to Counsel's Withdrawal.) On January 21, 2000, the Illinois Appellate Court granted the motion to withdraw and affirmed the post-conviction court's judgment. (Resp. Ex. I, Appellate Court of Illinois, First Judicial District, No. 1-99-1137, Order of Jan. 21, 2000 at 2.) Petitioner filed a *pro se* petition for leave to appeal on May 12, 2000, (Resp. Ex. J, Supreme Court of Illinois, No. 89477, Pet. for Leave to Appeal), which the Illinois Supreme Court summarily denied on July 5, 2000. (Resp. Ex. K, Supreme Court of Illinois, No. 89477, Order of July 5, 2000).

On August 24, 2001, petitioner filed a *pro se* petition for writ of habeas corpus in the United States District Court for the Central District of Illinois. Subsequently, the district court transferred the petition to the Northern District of Illinois, where it is now before the undersigned.

## DISCUSSION

### A.    Claim (1): prosecutorial misconduct

Petitioner alleges that the prosecutor engaged in misconduct during his rebuttal argument because (1) he referred to petitioner's failure to testify and (2) improperly labeled petitioner's counsel's argument as the "26[th] Street shuffle." Respondent argues that the Illinois Appellate Court's reasoning on direct review was not contrary to, and did not involve an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1).

To show prosecutorial misconduct, petitioner must demonstrate that the remarks were improper and that they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden* v. *Wainwright*, 477 U.S. 168, 181 (1986). In evaluating prosecutorial misconduct, the court considers several factors, namely, "(1) whether the prosecutor misstated the evidence, (2) whether the remarks implicate specific rights of the accused, (3) whether the defense invited the response, (4) the trial court's instructions, (5) the weight of the evidence against the defendant, and (6) the defendant's opportunity to rebut." *Hough* v. *Anderson*, 272 F.3d 878, 903 (7th Cir. 2001), citing *Darden*, 477 U.S. at 181. "These factors, however, are not to be applied in a rigid manner, but should be used as a guide to determine whether there was fundamental unfairness that infected the bottom line. For that

11

reason, [courts] often have characterized the weight of the evidence as the most important

consideration." *Hough*, 272 F.3d at 903 (internal citations and quotations omitted).

1.      *Whether the prosecutor commented on petitioner's failure to testify*

On direct appeal, petitioner argued that the prosecutor made improper comments by

referring to petitioner's failure to testify. The Illinois Appellate Court held that "the prosecutor's

remarks in closing rebuttal argument were not improper references to defendant's failure to

testify or present witnesses." (Resp. Ex. B at 17.) Rather, the appellate court determined that

because petitioner's counsel's closing argument concerned the strength of the State's case,

petitioner's counsel invited the prosecutor's comments on rebuttal. (*Id.*) The appellate court

recognized the rule from *People* v. *Barrow*, 133 Ill. 2d 226, 268, 549 N.E.2d 240, 258-59 (1989),

that a prosecutor cannot comment on the uncontradicted nature of the evidence if his comment is

intended to call the jury's attention to the defendant's failure to testify. The appellate court,

however, further recognized that *Barrow*, 133 Ill. 2d at 267-69, 549 N.E.2d at 258-59, provides

that a prosecutor may comment that "the evidence of guilt is unrefuted . . . where an accused

presents no evidence in his own defense and he is not the only person who could have done so."

(Resp. Ex. B at 17-18.) The appellate court reasoned that, when the prosecutor's rebuttal

argument was "viewed in context," petitioner's counsel had invited the prosecutor's comments

by stating that petitioner never gave a statement except a denial and that the State's witness lied

about petitioner's confession and arrest. (Resp. Ex. B at 19). The appellate court also stated,

"Here, defendant was not the only person who could have refuted the State's evidence." (*Id.*)

The appellate court analogized petitioner's case to *People* v. *Gant*, 202 Ill. App. 3d 218, 224, 559

N.E.2d 923, 927 (1st Dist. 1990), in which the court denied relief where the prosecutor

commented during closing argument that the defense counsel produced no evidence to contradict the State's evidence that the victim died due to gunshot wounds. (Resp. Ex. B at 19.)

In his habeas petition and reply brief, petitioner raises several challenges to the Illinois Appellate Court's reasoning, namely, that the prosecutor directly attacked his failure to testify during rebuttal argument, that the prosecutor indirectly attacked his failure to testify, and that the Illinois Appellate Court's reliance on *Gant* was "misplaced" because *Gant* is factually distinguishable from his case.[4] With respect to the prosecutor's direct comments on petitioner's failure to testify, the United States Supreme Court has enunciated that "the Fifth Amendment, . . . in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin* v. *State of California*, 380 U.S. 609, 615 (1965); *see Yancey* v. *Gilmore*, 113 F.3d 104, 106 (7th Cir. 1997). Here, petitioner relies on *Berryman* v. *Colbert*, 538 F.2d 1247, 1249, 1251 (6th Cir. 1976), where the court granted the writ of habeas corpus because, *inter alia*, the prosecutor stated, "Nobody was there when the robbery took place. Nobody that we can bring here to testify. The defendants [are] here, yes, but we can't get them to testify" during closing argument.

---

[4]In *Gant*, the defendant shot the victim, an elderly woman. 202 Ill. App. 3d at 221-22, 559 N.E.2d at 925-26. The victim subsequently underwent surgery to remove some but not all of the bullets and also suffered from a broken leg due to the gunshots. The hospital released the victim, but she returned two or three weeks later and died there. A forensic pathologist performed an autopsy on the victim and concluded that the victim died as a result of a pulmonary embolism. Specifically, the forensic pathologist determined that the victim's immobility, due to the gunshot wounds, caused stagnant blood to form blood clots in her legs and the clots dislodged and eventually entered her pulmonary arteries, causing her death.

During this whole time, however, the victim also was taking medication for hypertension. During closing argument, the prosecutor speculated that the defense counsel may offer this fact to rebut the State's evidence that the defendant caused the victim's death. The prosecutor reminded the jury that only the forensic pathologist testified as to the victim's cause of death.

The Illinois Appellate Court's determination that the prosecutor's comments were in response to petitioner's counsel's comments that petitioner denied making a confession, and that Detective Karl was not a credible witness, comports with clearly established federal law as determined by the United States Supreme Court. *See United States* v. *Robinson*, 485 U.S. 25, 32 (1988) ("Where the prosecutor on his own initiative asks the jury to draw an adverse inference from a defendant's silence, *Griffin* holds that the privilege of self-incrimination is violated. But where as in this case the prosecutor's reference to the defendant's opportunity to testify is a fair response to a claim made by defendant or his counsel, we think there is no violation of the privilege.").[5] Thus, unlike *Berryman,* where the prosecutor initiated the comment on defendant's silence, here, as in *Robinson,* the prosecutor responded in rebuttal to defendant's challenge to the credibility of the State's witnesses.

---

[5]Petitioner further contests the propriety of the prosecutor's comments by arguing that the prosecutor "artfully mixed" petitioner's failure to testify with his representations that the State's evidence was uncontroverted. (Pet. Reply.) As support for his argument, petitioner cites *United States* v. *Shue*, 766 F.2d 1122, 1127-28 (7th Cir. 1985). In *Shue*, the court held that the prosecutor violated the rule from *Doyle* v. *Ohio*, 426 U.S. 610 (1976), which is that "the prosecution may not use a defendant's post-arrest silence to impeach an exculpatory story told at trial." The court in *Shue* determined that the prosecutor improperly implied that the defendant's exculpatory story told on the witness stand was false because he did not tell it to the government agents after his arrest. Because the defendant was subject to cross-examination, the court recognized that

> [the] slight suggestion of guilty is inextricably intertwined with any use of post-arrest silence to impeach credibility. . . . In the present case, the [prosecutor] . . . implied more than the slight, inextricably intertwined suggestion of guilt--the prosecutor emphasized the suggestion of guilt. This use violates our notion of fundamental fairness.

*Shue*, 766 F.2d at 1131. The court reversed the defendant's conviction and remanded the case for a new trial.

Here, petitioner's claim does not concern a violation under *Doyle* but rather a violation under *Griffin. Cf. Phelps* v. *Duckworth*, 772 F.2d 1410, 1418-19 (7th Cir. 1985) ("*Doyle* v. *Ohio*, originally was linked to the policy against self-incrimination through *Griffin* as well as *Miranda* [v. *Arizona*, 384 U.S. 436 (1966)]. But with the former link severed, *Doyle* now depends just on *Miranda*[.]") (Posner, J. concurring). As discussed above, petitioner fails to demonstrate that petitioner's counsel's comments did not invite the prosecutor's comments on rebuttal.

With respect to the prosecutor's indirect comments on petitioner's failure to testify,

petitioner asserts that the prosecutor's comments concerning the uncontradicted evidence of

petitioner's confession were improper because he was the only witness who could testify in

response to the State's evidence. Petitioner relies on *United States* v. *Handman*, 447 F.2d 853,

855-56 (7th Cir. 1971), and *Raper* v. *Mintzes*, 706 F.2d 161, 166 (6th Cir. 1983). In *Handman*,

447 F.2d at 855, the court reversed the defendant's conviction and remanded his case for a new

trial because the prosecutor made several improper comments such as referring to the

government witness' testimony as "'intact, unchallenged and uncontradicted'" where only the

defendant "could have challenged or contradicted [that witness'] vital testimony." In *Raper*,

706 F.2d at 166, the court upheld the lower court's granting of the writ of habeas corpus because

the prosecutor made at least five improper and indirect references to the petitioner's failure to

testify such as that the State's evidence was uncontradicted or unrefuted but the petitioner was

the only witness besides the State's witness who could testify as to the evidence. Finally,

petitioner contends that the Illinois Appellate Court's reliance on *Barrow*, 133 Ill. 2d at 267-69,

549 N.E.2d at 258-59, was erroneous because the court in *Barrow* determined that other

witnesses besides the defendant could refute the State's evidence whereas petitioner argues that

he was the only witness who could refute the State's evidence.

Prior to the passage of Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2254(d), the Seventh Circuit set forth a rule that the State violates a

defendant's right not to testify where the prosecutor repeatedly refers to the State's evidence as

uncontroverted but the defendant is the only witness who is able to refute that evidence. *See*

*Yancey*, 113 F.3d at 106-07. In *Yancey*, however, the Seventh Circuit recognized that this rule no

longer is applicable after the passage of the AEDPA because that rule derived from circuit courts of appeals and not the Supreme Court of the United States. *Id.* at 106-07, citing *Freeman* v. *Lane*, 962 F.2d 1252, 1260 (7th Cir. 1992) ("Comments by the prosecutor on the state of the evidence that may indirectly refer to the defendant's silence . . . have not been the subject of direct Supreme Court guidance."). Thus, petitioner cannot show that the prosecutor's indirect comments on his failure to testify resulted in constitutional error such that it merits habeas relief.[6]

Finally, with respect to the Illinois Appellate Court's reliance on *Gant*, petitioner argues that *Gant* is distinguishable because the prosecutor in *Gant* was commenting on expert testimony. Petitioner's attempt to distinguish *Gant* is without merit. In *Gant*, during his closing and rebuttal arguments, the prosecutor pointed out that the State's witness, the forensic pathologist, was the only witness who testified about the victim's cause of death. 202 Ill. App. 3d at 224, 559 N.E.2d at 927. The appellate court recognized the rule that it is improper for the State to comment on the failure of the defendant to call a witnesses or to present evidence. *Id.* The appellate court, however, determined that the prosecutor did not violate this rule because, viewing the context of his statements, it was "permissible to comment on the uncontradicted nature of the evidence for the purpose of demonstrating the absence of any evidentiary basis for defense counsel's argument." *Id.* There, the forensic pathologist was the only expert to testify about the victim's cause of death. *Id.* at 225, 559 N.E.2d at 927. Here, *Gant* supports the Illinois

---

[6]The Illinois Appellate Court determined that petitioner was not the only person who could refute the State's evidence. Here, petitioner asserts that factual determination is incorrect. As mentioned earlier, when considering a habeas petition, this court must presume that any state court's factual determinations are correct unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Todd*, 283 F.3d at 846. The Illinois Appellate Court did not identify the other witness or witnesses who could refute the State's evidence, although the facts indicate that Assistant State's Attorney Pollack could have refuted Detective Karl's testimony that the petitioner confessed.

Appellate Court's reasoning because it was permissible for the prosecutor to show that petitioner's counsel lacked an evidentiary basis when he argued that petitioner denied that he confessed and when he questioned Detective Karl's credibility.

Accordingly, the court finds that the Illinois Appellate Court's reasoning was not contrary to, and did not involve, an unreasonable application of clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1).

2.  *The "26th Street shuffle" comment*

On direct appeal, the Illinois Appellate Court determined that the prosecutor's comment regarding the "26th Street shuffle" was improper. (Resp. Ex. B at 20.) The appellate court, however, concluded that the prosecutor's comment was harmless error because "the evidence adduced at trial proved defendant guilty beyond a reasonable doubt, and the prosecutor's comments were not so prejudicial as to have materially contributed to defendant's conviction." (*Id.*)

On habeas review, petitioner asserts that the prosecutor engaged in misconduct when he used the term the "26th Street shuffle" because he attacked the credibility of petitioner and his counsel. Petitioner relies on Illinois case law where the courts reversed the defendant's conviction and remanded the case for a new trial because of the prejudicial effect of the prosecutor's improper remarks during trial. See *People* v. *Weathers*, 62 Ill. 2d 114, 120, 338 N.E.2d 880, 883-84 (1975) (during closing argument, the prosecutor told the jury that the defendant was a "habitual criminal, who had not been caught before only because he was a 'pretty sharp cookie,' and because 'he is too smart'" given that there was no evidence to support these statements); *People* v. *Grizzel*, 382 Ill. 11, 22, 46 N.E.2d 78, 82-83 (1943) (during closing

17

argument, the prosecutor referred to the defendants as "crooks, thugs and gangsters" and also stated, "'Look at those [(one of the defendant's)] eyes. Aren't they the slant eyes of a Jap?'"); *People* v. *McCollum,* 239 Ill. App. 3d 593, 599-600, 607 N.E.2d 240, 245-46 (3d Dist. 1993) (throughout trial, the prosecutor made several improper comments, including that the blood sample from the victim came from the victim's heart, noting the defense investigator's salary was higher than local police salaries and aligning himself with the local police, stating "'I guess us poor old country boys in Hancock County didn't do too bad.'"); *People* v. *McCray,* 60 Ill. App. 3d 487, 489-90, 377 N.E.2d 46, 47-48 (1st Dist. 1978) (during cross-examination, the prosecutor asked the defendant if he had "'[a]ny occupation other than robbing people.'").

The Illinois Appellate Court determined that, although the prosecutor's use of the term the "26th Street shuffle" was improper, his comments resulted in harmless error. This court agrees. Taken in context, the prosecutor's use of the term "26th Street shuffle" was not so improper as to prejudice the petitioner. The cases cited by petitioner demonstrate, unlike here, misconduct on the part of the prosecutor concerning unsupported remarks directed at the ethnicity or criminal nature of a defendant. Rather, the prosecutor's comments appear to fall within the constitutional confines of the adversarial system. *See United States* v. *Moore,* 104 F.3d 377, 390-91 (D.C. Cir. 1997) (finding that although the prosecutor's reference to the defendant's attorney as a "professional arguer[]" who "mucks . . . up" the "judicial system," could have been construed as disparagement, but that it fell within the prosecutor's duty to "point out to the jury that the doubt that will prevent a conviction is a doubt founded upon reason not one suggested by the ingenuity of counsel.").

This court, however, recognizes that petitioner also asserts under claim (3) that the State failed to produce evidence at trial that demonstrated his guilt beyond a reasonable doubt. This claim, therefore, goes directly to the Illinois Appellate Court's reasoning that there also was no harmless error because the evidence adduced at trial proved petitioner's guilt beyond a reasonable doubt. Thus, the court will consider petitioner's dispute with respect to this portion of the Illinois Appellate Court's reasoning under claim (3). Otherwise, for the reasons set forth above, the court denies claim (1) on the merits.

**B.     Claim (2): ineffective assistance of trial counsel**

Petitioner argues that he was denied effective assistance of trial counsel where (1) trial counsel failed to move to prohibit the gunshot residue ("GSR") testimony or failed to object to said testimony, (2) trial counsel failed to prepare a plausible line of defense and investigate and introduce all evidence and information to the court and failed to advocate vigorously on behalf of petitioner on his pretrial motion to suppress, and (3) trial counsel failed to interview and call two witnesses who observed the crime as "occurrence witnesses" and would testify as to the persons in the perpetrator's vehicle. (Pet. at 7.) Respondent asserts that petitioner's claims should be denied based on the Illinois Appellate Court's reasoning on direct review and the circuit court's reasoning on post-conviction review.

To prevail on a claim for ineffective assistance of (trial) counsel, petitioner must meet the stringent two-pronged test enunciated by the Supreme Court in *Strickland* v. *Washington*, 466 U.S. 668 (1984). *See Bell* v. *Cone*, 535 U.S. 685, 697-99 (2002) (determining that counsel's performance met the *Strickland* standard). Under the *Strickland* standard, petitioner must show: "(1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced

19

the defense." *Kubat* v. *Thieret*, 867 F.2d 351, 359 (7th Cir. 1989); *see also Williams*, 529 U.S. at 390-91. With respect to the first prong, this court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. As for the second prong, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. If the court finds that the petitioner fails to meet one prong, it need not consider the other. *See Brumley* v. *DeTella*, 83 F.3d 856, 861 (7th Cir. 1996) ("a habeas court may focus on either prong of this test, as the efficient dispatch of judicial business dictates").

1.    *Trial counsel's handling of the GSR testimony*

On direct appeal, the Illinois Appellate Court determined that trial counsel was not ineffective for failing to file a motion in limine to bar the GSR testimony or for failing to object to this testimony during trial. Specifically, the appellate court recognized that the decision to file or not to file a motion in limine is a matter of trial strategy and generally will not support an ineffective assistance of trial counsel claim, citing *People* v. *Orange*, 168 Ill. 2d 138, 153, 659 N.E.2d 935, 942 (1995) ("A decision which involves a matter of trial strategy will generally not support a claim of ineffective representation."). (Resp. Ex. B at 16.) Moreover, the appellate court determined that trial counsel had no basis to object to the GSR testimony at trial because the expert testified that the evidence was inconclusive. (*Id.*) The appellate court recognized that defense counsel used the GSR test results on cross examination and in closing argument to argue that the State had no evidence that petitioner touched the gun. (*Id.*) For these reasons, the

appellate court held trial counsel's performance neither was deficient nor prejudicial to petitioner. (*Id.*)

On habeas review, petitioner argues that the appellate court's reasoning was erroneous because, "[t]rial [c]ounsel should not be allowed to shield themselves from allegation[s] of ineffectiv[e]ness by simply claiming trial strategy[,]" citing *McCall* v. *O'Grady*, 908 F.2d 170 (7th Cir. 1990). Petitioner's reliance on *McCall*, however, is unavailing. In *McCall*, during the petitioner's criminal trial, his counsel attempted to impeach the victim with statements from a police report. *Id.* at 175-76. The State objected to counsel's questioning because the police report did not contain the victim's direct statements but rather contained the victim's recounting of what he said to a detective. Because the evidence was critical to the petitioner's criminal case and the trial counsel failed to perfect the impeachment, the petitioner sought a writ of habeas corpus based on an ineffective assistance of counsel claim. Without holding an evidentiary hearing, the lower court agreed with the petitioner and granted the writ. On appeal, the Seventh Circuit decided to reverse and remand the case for an evidentiary hearing. Specifically, the court stated that the petitioner "must come forward with 'sufficiently precise information' (i.e. testimony by [the petitioner's trial counsel] and/or [the investigating police officer] or the equivalent thereto) to establish that [the petitioner's trial counsel's] aborted impeachment attempt was indeed a 'failure' and not a strategic decision." *Id.* at 175.

Here, unlike in *McCall*, the appellate court had facts before it that demonstrated that petitioner's trial counsel clearly used the GSR testimony as a matter of trial strategy. *See Strickland*, 466 U.S. at 689 ("Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.") (internal citations and quotations omitted). Thus, petitioner fails to show that the Illinois Appellate Court's reasoning was contrary to or involved an unreasonable application of *Strickland*.

2.      *Trial counsel's investigation and advocacy of petitioner's case*

On post-conviction review, petitioner only argued that trial counsel was not a vigorous advocate because he failed to investigate and introduce evidence during petitioner's suppression hearing and trial. (Resp. Ex. E at 7.) In interpreting *Strickland*, 466 U.S. at 689, the post-conviction court determined that a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable processional assistance" and that petitioner must show substantial prejudice. (Resp. Ex. F at 8.) The post-conviction court held that petitioner failed to make such a showing under *Strickland*.

As in his post-conviction petition, petitioner fails to point out what trial counsel failed to do that resulted in a constitutional violation. *See generally McCall*, 908 F.2d at 173 (stating that the "petitioner cannot meet [the *Strickland*] burdens absent a specific, affirmative showing as to what the missing evidence or testimony would have been."). Rather, based on the court's review of the record, the defense counsel's theory of defense was to show that the State failed to carry its burden. As such, petitioner fails to show that the post-conviction court's reasoning was either contrary to or involved an unreasonable application of *Strickland*.

3.    *Trial counsel's failure to interview and call potential witnesses*

Petitioner argues that trial counsel failed in his duty "to at least contact the potential witnesses named in the police reports[,]" citing *Goodwin* v. *Balkcom*, 684 F.2d 794, 810-12, 817-18 (11th Cir. 1982) (granting the writ of habeas corpus based on ineffective assistance of counsel claim where, *inter alia,* counsel failed to interview crucial witnesses), and *Thomas* v. *Wyrick,* 535 F.2d 407, 413-16 (8th Cir. 1976) (granting the writ of habeas corpus where, *inter alia,* counsel failed to investigate and interview witnesses and the petitioner produced an affidavit from a potential witness who recanted his confession that the petitioner participated in the crime). (Pl. Reply.) Specifically, petitioner argues that trial counsel was ineffective for failing to call two occurrence witnesses, who would have testified as to the persons they saw in the perpetrator's vehicle.

On review, the post-conviction court held that petitioner failed to demonstrate ineffective assistance of trial counsel because petitioner did not produce affidavits from the witnesses, attesting what would be their testimony, and failed to explain the significance of their testimony, citing *People* v. *Johnson,* 183 Ill. 2d 176, 192, 700 N.E.2d 996, 1004 (1998), and *People* v. *Dean,* 226 Ill. App. 3d 465, 468-69, 589 N.E.2d 888, 890 (1st Dist. 1992). (Resp. Ex. F at 8-9.) On habeas review, petitioner's claim suffers the same consequence. *See Wright* v. *Gramley,* 125 F.3d 1038, 1044 (7th Cir. 1997) ("In the case of an uncalled witness, we have held that at the very least the petitioner must submit an affidavit from the uncalled witness stating the testimony he or she would have given had they been called at trial[,]" citing *United States* v. *Kamel,* 965 F.2d 484, 491 (7th Cir. 1992)). Thus, this claim fails.

## C.   Claim (3): sufficiency of the State's evidence to convict petitioner

Petitioner raised his claim that the State failed to prove his guilt beyond a reasonable doubt for the first time in his post-conviction petition. The post-conviction court determined that petitioner waived this claim because he should have raised it on direct appeal and not on post-conviction review, citing *People* v. *Izquierdo*, 262 Ill. App. 3d 558, 560, 634 N.E.2d 1266, 1268 (4th Dist. 1994) ("Reasonable doubt of a defendant's guilt is not a proper issue for a post-conviction proceeding."), and *People* v. *Stewart*, 123 Ill. 2d 368, 372, 528 N.E.2d 631, 633 (1988) (stating "[a] post-conviction proceeding is not one in which a defendant's guilt or innocence is determined, but rather is limited to consideration of constitutional issues which have not previously been reviewed.").

It is clear that the post-conviction court relied on waiver as an independent and adequate state law ground to dismiss petitioner's sufficiency of the evidence claim. *See Schaff* v. *Snyder*, 190 F.3d 513, 524-26 (7th Cir. 1999) ("The state appellate court properly applied the Illinois law of waiver and correctly concluded that, because the claim could have been raised and addressed on direct appeal but was not, it was waived."). Thus, the court finds claim (3) to be procedurally defaulted. Nevertheless, as discussed with respect to claim (1), the court considers the sufficiency of the evidence claim on the merits because, on direct review, the Illinois Appellate Court reasoned that the prosecutor's misconduct was harmless error given that, *inter alia*, the evidence adduced at trial was sufficient to support petitioner's guilt beyond a reasonable doubt.

For a sufficiency of the evidence claim, the court must ask: "whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson* v. *Virginia*, 443 U.S.

24

307, 319 (1979) (emphasis in original). In applying this standard, the habeas court gives deference to the trier of fact and does not make credibility determinations, substitute judgments or re-weigh the evidence. *See Ford* v. *Ahitow*, 104 F.3d 926, 938 (7th Cir. 1997) (stating, "in *Jackson*, [443 U.S. at 319,] the Court made clear that the responsibility for resolving conflicts in the testimony, for weighing the evidence and for drawing reasonable inferences from the basic facts to ultimate facts, is indeed the domain of that trier of fact"); *United States* v. *Mejia*, 909 F.2d 242, 245 (7th Cir. 1990) ("Credibility is for the jury, not this court, to determine [the witness'] testimony was not inherently unbelievable; it did not contradict the laws of nature or other indisputably true evidence.").

Here, petitioner argues that the jury convicted him based on circumstantial evidence that was insubstantial to prove his guilt beyond a reasonable doubt. Specifically, petitioner points out that the State relied on the inconclusive GSR testimony, the "sketchy" description of his vehicle and that his vehicle was in the same vicinity as the crime scene. Furthermore, petitioner points out that the State produced no gun, his fingerprints were not found on his vehicle, that none of the eyewitnesses could identify him as the perpetrator and that the coat he was wearing did not match the police's description because his coat did not have a hood. Petitioner asks this court to re-weigh the evidence and disregard the evidence of his confession which the jury was entitled to credit. Thus, the court finds that petitioner cannot show that the Illinois Appellate Court's reasoning that the jury convicted him on evidence that established his guilt beyond a reasonable doubt was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1). For these reasons, the court denies claim (3).

## ORDER

For the reasons stated above, the court concludes that petitioner is not entitled to relief.

This case is terminated.

Enter: _Joan H Lefkow_

JOAN HUMPHREY LEFKOW
United States District Judge

Date: January 5, 2004